The sixth case for argument is GLBT Youth in Iowa Schools Task Force, et al. v. Kimberly Reynolds, et al. and Penguin Random House, et al. v. John Robbins, et al. Mr. Wesson May it please the Court, Counsel, I rise today representing the State Defendants in this consolidated appeal. Last year, the Iowa Legislature enacted an important parental rights and education reform. This appeal rises from an injunction entered in joining enforcement of two parts of that law. First is the instruction section, which prohibits teaching sexuality or gender identity in classrooms. Second is the library program, which, affirming the longstanding responsibility of public school libraries and affirming the public school curricula, requires that books on library shelves be age-appropriate. And it defines age-appropriate to exclude books that include sex acts. To begin with the instruction section, there are three reasons why this Court should vacate the injunction below. First, there is not a live controversy between the State Defendants and the Penguin Plaintiffs because the State Defendants contend that this law does not apply to books when it comes to gender identity or sexuality. Second, the Plaintiff A.C., which is the only plaintiff in the ISS plaintiff group that the District Court found had standing, is not subject to any discipline, potentially or otherwise, under this law and so lacks standing to challenge it. And third, if this Court wishes to reach the merits, it should interpret the law consistent not only with longstanding Supreme Court precedent on narrowing constructions, but under Iowa Code Chapter 4, which at various points lays out rules of construction that orders that courts interpreting Iowa law should do so in a way meant to achieve a reasonable and just result and with the assumption that the legislature intended to comply with the federal Constitution. The instruction section, going to A.C. for a moment, has no potential for discipline. The only people that could be disciplined under any part of SF-496 are teachers, staff, or school districts. A.C. has no possibility of facing discipline, and any chill that the fourth grader A.C. feels A.C. may face is due to perhaps other reasons outside of the law. Second, the instruction section, when read, has a plausible and indeed the State believes the best reading to be read to only affect classroom instruction. That can incorporate each of the various parts of the list codified at Section 279.80 of programs, promotions, questionnaires, or surveys. And it does so in a manner that just removes from kindergarten through sixth graders teaching about gender identity or sexuality outside of the health curriculum. Third, when it comes to the merits, this court really should look to Iowa Code as to how to interpret the law. The district court put forward a reading of the law that could be borne by the text, but that reading would lead to absurd results. The district court acknowledged that due to the breadth of his reading, that schools could not use words like Mr. or Miss, it could not have boys or girls sports teams, and it could not have boys or girls bathrooms. Given that the legislature has recently also enacted a bathroom law, it would seemingly be inconsistent to have such a broad reach when there is a narrower, plausible construction of the law at hand. Moving to the library program, the library program... Which is simply a less emphatic way of saying that we should not do... facial challenges are bad. Facial challenges are bad, and even in the First Amendment... That argued to the district court? Yes, Your Honor. We argued that it was inappropriate to enter a facial challenge at the district court because there was a substantial... I do not believe that Broderick v. Oklahoma was cited at oral argument in the district court. Or in the memos. Or in the memos, but I believe... The district court was dealt a bad hand. Your Honor, the State defendants raised various cases, both from this circuit and from the U.S. Supreme Court, explaining why pre-enforcement facial challenges are inappropriate, especially when a substantial sweep of the law is not outweighed by the potentially illegitimate sweep of... They're not just inappropriate. They may only be used... They have been employed sparingly and only as a last resort. Your Honor... There's no last resort here. The State agrees with your interpretation to put forward... That's not an interpretation. That was a quote. The court... The State agrees that the court is bound by that quote to put forward our friend's strongest argument as the State sees it. In the First Amendment context, the application of that standard has sometimes been fuzzier, and that is why, given the potential for chilling speech, that sometimes... This was the First Amendment discussion. Your Honor, the State will happily concede that if you all believe that Project V Oklahoma applies here and the facial challenge was improperly entered, that it was improperly entered and should be vacated, and that there are routes for as-applied challenges to parts of the law that proper plaintiffs may have if they believe that their rights have been violated moving forward. Moving on to the library program, the library program... There's all kinds of as-applied... Like the recent Fifth Circuit case was an as-applied challenge for the removal of 17 books from one library. Yes, Your Honor. That's when you get at the core of the First Amendment issues and their resolution. Yes, Your Honor. To the extent that the First Amendment applies, one argument that the State believes is important for this court to consider is that library curation is government speech, and there are two cases that I would like to bring to the Court's attention on that. One is admittedly dicta in the Peeta v. Gittins case coming out of the D.C. Circuit where in dealing with whether monuments in D.C. could be selected based on viewpoint, the Court analogized to the obvious government speech in library curation in public libraries. The second is to Judge Duncan's dissent in that Fifth Circuit case that you raised. The Fifth Circuit opinion is very helpful in many ways for understanding some of the pitfalls that are put before the Court today. No matter which way the Court rules, either it will be extending the government speech doctrine to public school libraries for the first time, or it will be for the first time finding some type of First Amendment-protected right for school library books in the Eighth Circuit. Either way, new ground is going to be broken. Robertson, if a statute serves a valid educational purpose, and if it's drafted as a viewpoint-neutral, content-based restriction, is the First Amendment even implicated? Not necessarily, Your Honor. And if not, why would we need to reach the government speech issue? This Court would not need to reach the government speech issue if it found that, and if it found that the statute was constitutional on those grounds. Going back to the Fifth Circuit case. You know, I hate to talk about the government speech issue any more than it's already been talked about. But, you know, if you think about government speech, ordinarily the monuments are placed there by a government and they're controlled by the government. But the State is separate from the school boards, and school boards have historically had the ability to make decisions on what they curate the library, not the State, right? And so if it's government speech at all, isn't it the speech of the school boards that we should be concerned about here rather than the speech of the State statute? Under longstanding Iowa law, the public school libraries are intended explicitly and codified in statute and in Iowa Administrative Code to support the school curriculum, which is also set by the State. To the extent that librarians and school boards have discretion in what books they select in curating the books on the shelves, and in doing so find appropriate books to put on those shelves, they must do so within the confines of the State law, because the public schools are themselves representative of the State and the values that the State seeks to inculcate in children as part of its pedagogical goal of raising its future citizens. Judge Duncan, in his dissent, if you control F for Tolstoy, has a good discussion of how curation of books on shelves can be helpful in understanding how the government speaks through books it places on the library shelves. Before the Court, there is an opportunity to potentially create some mayhem, and so just as one pragmatic point, the State wants to raise that this is obviously a very important issue in Iowa, and to the extent this Court agrees that removing some type of book that has sex acts or pervasively vulgar or something else, it would not be unlikely to see the legislature who seeks to follow the law to enact a law trying to follow this Court's path forward. And in doing so, the State just wishes the Court to be cautious, because as it is right now, there is a mechanical application of certain graphic descriptions of sex acts for which books should be removed under the law, and whether that is more or less helpful to librarians than Miller obscenity light standard or some of the other standards that have been put forward today is something that the Court should also consider as it determines how schools and how the State can best ensure that age-appropriate books are on the shelves. I reserve the rest of my time for rebuttal. Thank you. Sperling. Thank you, Your Honor. May it please the Court. I'm Fred Sperling, and I represent the plaintiffs in the Penguin case, which only involves the two book removal provisions in SF-496. Counsel for the Iowa Schools Plaintiffs and I have agreed to split the time allocated to us equally. You've got a facial challenge, right? Yes, Your Honor. So how can the district court not talk about the Broadridge lines of cases when this Court, this Court repeatedly has emphasized that facial challenges of statutes and ordinances are disfavored? So, Your Honor, on page 25 of the district court's opinion, it properly stated the standard the Supreme Court has set forth for facial challenges. A law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep. That's United States v. Stevens. You're looking down. I can't understand what you're saying. Your Honor, the district court — I'm on page 25. Where are we? So the last full paragraph, Your Honor, in the middle of that paragraph, the district court accurately quoted from the United States Supreme Court in United States v. Stevens that a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep. And that's exactly what happened here, Your Honor. The question before this Court is not whether some of the books the State defendants can point to can be constitutionally removed from school libraries. They can, and they have been under existing law before the adoption of SF-496. The question that's actually before this Court is whether this overbroad and vague statute is constitutional, and it's not. In contrast to prior cases, like the case the Court referred to, the Little case that was decided last week by the Fifth Circuit. This is not a case involving the ad hoc removal. Where is the district court's analysis of plainly legitimate sweep and some sort of quantitative comparison? Well, Your Honor, one of the factual presentations before the Court is the chart, which is our addendum to our brief in this Court, which — Well, I know about the number of enforcements and so forth. So what you have to — I'm talking about which books are we being removed. Yeah. So we're having books, Your Honor, like Animal Farm, Brave New World, 1984. Ironically enough, books that all deal with government attempts to — No, no. I'm talking about the plainly legitimate. Yes, Your Honor. Are you saying that books describing sexual perversion are all kinds of — are you saying everything that's related to this subject has to go — cannot be removed? Absolutely not, Your Honor. Well, then, okay. Now why do we have to do this facially? Because the State defendants were only able to point to a small number of books which they presented to this Court to shock and outrage the Court. In contrast, you have an enormous number of books.  Last week, the Des Moines Register tallied over 3,400 books had been removed from Iowa State libraries. Go sue the school boards that are doing that. Well, Your Honor, we did sue two of the school districts. But the problem here is — and there were over 300 school districts. The problem here is you have a — you have a statute that is statewide. And I want to emphasize — You know, when you — if you win a good-ass applied case in a universe of defendants such as school districts, they get the message. Well, Your Honor, the problem here is — As opposed to us pretending that we are a legislature, and then the Iowa legislature having to correct or amend or try to persuade us to legislate differently. So, Your Honor, we don't dispute that the Iowa legislature could enact a constitutional statute. And, in fact, there's an existing statute that prohibits obscenity in schools. The statute enacted here, Your Honor, ignores the standards explicitly set forth by the Supreme Court in dealing with matters of sexual content. They apply the same standard to a kindergartner as they do to a twelfth grader. So if you have a book that violates the standard as to a kindergartner, it's taken out of libraries for twelfth graders. And so are you saying that it's unconstitutional for a school library to carry its collection other than as to obscenity? No. No, we're not saying that at all, Your Honor. We're saying this statute fails to do so in a constitutional manner. And I want to draw the critical distinction here. This is the first case that presents a statewide, across-the-board man. The other cases that have been presented to the Court are ad hoc removal of only a few books. This requires school librarians to remove literally hundreds of books without any consideration of their merit, including classic works of literature that aren't remotely obscene, a wide range of fiction, including history books, and books that Iowa students are actually tested on in their AP exams. That's the problem, Your Honor. You have this enormous volume of books that in no way are obscene or impermissible that have been taken off the shelves. And that's why the — to use the language of the Supreme Court, the unconstitutional applications here is to completely swamp any legitimate suite. And I want to emphasize again — But, Counselor, are those what you call an enormous volume of books that have been removed, have they been removed because the statute requires them to be removed or because the district court failed to give the statute a reasonable constitutional construction? It seems to be that the district court gave this such an absurd construction that you can't have boys and girls, you can't have husbands and wives, you can't refer to the gender of historical figures. They're not following the rules of statutory construction. Well, that's one of the two provisions, Your Honor. That's the so-called identity and orientation provision. And the State has taken the position that that's not applicable to books, and if this appears that a library program is one of the programs included on the face of the statute, but the problem there, Your Honor, is it literally, on its language, would require the removal of any book that records to any relationship. And if it doesn't do that, then it requires a discriminatory enforcement, which creates an additional problem. You've just violated a half-dozen rules of statutory construction with that assertion. But, Your Honor — But that's what the statute does. But what I'm talking about — By reading of it. But what I'm talking about is what the statute says on its face, Your Honor. But that's your interpretation of the facial. Well, it's what the words mean, but — You haven't spent years arguing with — hearing lawyers argue about what the facial interpretation is. Again, if this Court concludes that the identity orientation provision does not apply to books, we'd welcome that. But let me address the age-appropriate standard, because that standard requires educators to remove library books across the board, from K through 12. There's no distinction whatsoever as to age. And so books that might be fully appropriate for a 12th grader might not be for a 9th grader or a 6th grader or a 3rd grader or a kindergartner. It makes no distinction whatsoever in that regard. And what constitutes — what is violative of that? What does that violate? So you have books that say nothing more. Are we talking substantive due process, procedural due process, First Amendment, Fourth Amendment? What are you talking about? We're talking plainly the First Amendment, because you have a situation there where you have a book that says nothing more than the two people spent the night together and those books are removed from the library. When you look at the evidence in the record, at the vast sweep of books — Well, what First Amendment case says? This is not — Well, the Supreme Court and the Eighth Circuit have applied — What if Brave New World is available in the bookstore across the street? Why does the First Amendment care? Well, the Supreme Court has rejected the argument that alternative access cures a First Amendment problem. Your Honor — Not in every context, though. The Supreme Court and this circuit have held that Miller should be applied in an age-appropriate standard in issues of sexual content. The Supreme Court has been very clear on that and so has this Court as well. Are we talking obscenity cases or what? Yes, Your Honor. Cases dealing with sexual content. I see that my time has expired and I have agreed to share my time equally. I would like to address the Court's questions further, but I don't feel that I have the right to take co-counsel's time. You guys get one block of time. You do it any way you want. I feel I'm bound to yield the remainder of the time as a co-counsel in the other case. May it please the Court. Mr. Storey. Thank you, Your Honors. I want to spend my time talking and addressing your questions, but I'd like to address specifically the instruction and promotion prohibition to begin. And this is this impermissibly vague, subject to arbitrary and discriminatory enforcement and unconstitutionally overbroad statute, right? And this talk about being a legislature, that's what the State is asking this Court to do by asking for this narrowing construction. You know, nociterososis or however that's pronounced does not mean you take the narrowest term and apply it to all the others. All right? The State just before even said this applies to teaching, but the statute doesn't even say teaching. Counsel, I think the statute requires removal of books containing a description of sex acts as statutorily defined. Isn't there a difference between a description of a sex act and a mere reference to people sleeping together, as counsel asserted, would have to be removed? Thank you, Your Honor. I was actually referring to the other gender identity and sexual orientation provision, but the point still stands as I believe that description or depiction language is brought as well. And I see your point that describe or depicts could mean mere reference, and that's kind of the point the Department of Education did in its proposed rules. But we found that that doesn't really help. I mean, when you're talking about creative expression, Your Honor, so many ways to describe sex, for the State to conclude that all descriptions or depictions of them are improper, are age-inappropriate, right, it's irrational because it means that we're not talking about vulgar. We're talking about vulgar or clean. We're not talking about inappropriate. We're talking about inappropriate and appropriate descriptions. But back to the instruction prohibition. The problem is that it doesn't apply only to mandatory or compulsory instruction, and it does not say mandatory or compulsory, and it says a lot more than instruction. It says program, curriculum, test, survey, questionnaire, and promotion. So as for limiting constructions, they are not applied, as this Court knows, unless they are reasonable and readily apparent. And I'll give you another quote. It does not rewrite a law to conform it to constitutional requirements, and that's from the Stevens case. All right? Because that's what invades the legislative domain. That is what takes away that incentive for them to draft them. Is there a decision attacking a statute as opposed to a school board interpretation or decision to remove or instruct or whatever? I'm sorry. Is there a circuit case? No, Your Honor, because this is the first time this has happened. States generally stay out of this. They leave it to local school boards. Yes, they set generally applicable standards, such as the definition of age appropriate that existed before they've included this sort of carve-out. But it's always been local school boards, and that's why you have, you know, Pratt and the Fifth Circuit one and the other cases that come up, because they're done on this sort of, you know, case-by-case basis. And that's really why a facial challenge is appropriate here. No, it's not. I mean, that's why you're having fun doing it. But, no, that's exactly a reason not why it's not appropriate, in my view. I understand, Your Honor. This could easily have gone to probably a series, certainly more than one, as-applied challenge from which the judicial interpretation of this statute and how school boards should apply it would become clear to educators in Iowa. It wouldn't be this kind of an injunction. Thank you, Your Honor. I question how many it would take. And with a statute that says anything relating to gender identity or sexual orientation, how many cases does that take to find an interpretation that accepts the legislator's intent but does not rewrite the law? I can't see any, because I can't see a way to read this law without it not making sense or not being constitutional. You don't want to see a way. You don't. That's like, counsel, for example, how does this statute ban AC's GSA extracurricular club? I'm not seeing that. Thank you, Your Honor. There's two words in the statute that her school district relied upon to make that decision. And she's not the only school from the only school district in Iowa that has occurred at a K-6 school. There's program and there's promotion. Now, the State says program must mean mandatory program, but there's lots of different programs in the Education Code. There's library programs, as we've been pointing out, and there's also something called extracurricular programs in the Code. GSA is an extracurricular program. So what if the school had a Bible club? They can't provide that as a program under the Establishment Clause, but they can still provide it to children. How is that different here? The school can and should provide a Bible club, but if the Bible club, I don't know, wants to take up issues relating to gender identity and sexual orientation, then I question whether the statute would allow them to do that, because now what they're engaged in is conduct relating to gender identity and sexual orientation. Wouldn't each of those decisions be made by the local school board, and shouldn't they be brought as applied challenges rather than as a facial challenge? Because it seems to me that much of what you're arguing deals with whether or not this statute, just on its face, it says the, I forget, G-Y-S-A, or GSA, that they can't have those clubs. You look at that and you say, well, wait a minute. That's an interpretation of the statute. That's not just the statute itself has mandated that, is it? I mean, that's a real problem. We've got this giant kind of injunction based on this facial challenge, and it just seems like something that we haven't usually seen or done. I see I'm out of time. Judge, may I answer the question? Answer that first, certainly. Thank you, Your Honor. Yes. Your Honor, the problem with this law is there is no way to divine the limiting start, the permissible constitutional sweep, because of how broadly it is written. So I can't see how we would get there. Did that answer your question? I understand, and I would assume that, at this point, that is your position. Whereas, you could look at the other side and say, well, what you do is you take small bites at it and slap it down piece by piece, instructing the various school districts what are the parameters. Because I think that what's going on here is you've got the school districts are in a dead panic. They're applying it more broadly than the language of the statute itself provides. And now we have an injunction, and so we're sitting in a world where we're talking about 3,400 books, and what's that? And someone says the Portrait of Dorian Gray has got to go. And those are all specific ideas that could have been litigated, right? That 1984 Animal Farm and the Portrait of Dorian Gray probably are things that have artistic merit, such that the application of this statute is inappropriate. But Shane, that it's just so broadly defined that we can't even piecemeal it, right? Well, it reminds me of the Gideon's Bible cases. Right. When I was an early judge, and they were done as applied, and the rules were, yeah, you can come in the school, but you can't come in the classroom, and you can maybe give away books outside the school. But it was, you know, they... The problem, Your Honor, is, if I may, the State had the chance to provide some guidance on this with these Department of Education proposed rules, and it didn't take it. Well, all right. We're not going to... Yeah. You know, that... Sure. Thank you, Your Honor, for your time. It's an excuse for a facial challenge. Well, if they'd have done better in interpreting or gone faster, we wouldn't have had to just try to get the whole statute gutted. Thank you, Your Honor. For rebuttal. Thank you, Your Honors. This State does not believe that a facial injunction is appropriate against either of these two sections because both require overly broad reading of the law to find constitutional infirmities. Going to some of the points addressed by my friends on the other side, it is still not clear that AC has standing to challenge this case because the instruction section in no way threatens enforcement against AC. To the extent this Court reaches the merits argument about the instruction section, the instruction section applies to classroom instruction and doesn't require removing books from library shelves. One important point under Iowa Code in its interpretive chapter is Iowa Code Section 4.7, which deals with general and special or narrow statutes, and it says to the extent possible those should be read in conformance with each other. The library program lays out the standards for what books are age-appropriate in libraries, and that is the appropriate way to interpret that law. So, too, for some of the other broader parts, or potentially broader parts of the instruction section, for example, one of the list of points is the questionnaire. There's a whole other section of SF-496 dealing with questionnaires, and the State would submit that that would control rather than the instruction section other than in the context of classroom instruction, which is what that section addresses. Robertson, are you challenging standing as to the library provision? Your Honor, for there to be standing in the ISS case, there must be some kind of constitutional right or harm. If this Court agrees that library curation and public school libraries is government speech and there is no First Amendment harm, then none of the plaintiffs have standing. But doesn't that go more to the merits than to standing? If there were a clearly established Eighth Circuit precedent on the point, the answer would be yes. But because we are disagreeing about whether a right exists at all, the two are inextricably tied. Because if there is a First Amendment right to receive information on library shelves, then there is standing to challenge asserting that right. But if there is no such right, then there is no standing. And because it's an open question in this Court as to whether the government speech doctrine applies, that addresses standing in that case. But because these cases, for the purposes of this appeal, have been consolidated, and because for purposes of the preliminary injunction and the appeal, the Penguin Random House plaintiffs do have standing or likely have standing, there is no reason necessarily to deal with that. But to the extent this Court wanted to issue a helpful opinion about standing in this context, the State would welcome such clarification, as it would aid in future potential facial challenges. Hey, you know we don't do helpful opinions. It's against our rules. Judge Erickson, the last opinion you wrote I found very helpful. So thank you. Thank you. Just going to one last point. This law was done by the Iowa legislature with the intent of helping support Iowa's youth and in helping to curate the way that Iowa students learn. And a facial injunction against key parts of this law have stymied that. This law was in effect for about one semester before this pre-enforcement-style challenge was brought, facially challenging the two sections. The State believes that as these, if this injunction is vacated, the school districts, the schools and the students will understand what the law means and as time moves forward, this will become an integral part of Iowa's educational landscape. Thank you all very much. If there are no further questions, I'll yield my time. Thank you, counsel. It's an important case in a lot of ways. Obviously important in Iowa and also I think more broadly difficult issues that have been well-briefed and argued. We'll take both cases under advisement and do our best with it. Thank you. Does that conclude the morning's arguments? Yes, Your Honor. Then the court will be in recess until 9 o'clock tomorrow morning.